IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03325-MSK-MJW

SEB ASSET MANAGEMENT S.A. and SEB INVESTMENT MANAGEMENT AB,
Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK, and SCOTT T. SCHEIRMAN,

Defendants.

---

## ORDER
## CONCERNING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION ( *Docket No. 106-1* )

---

To facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention,

IT IS HEREBY ORDERED that:

1.    All Parties are bound by and subject to the terms of this Order.

2.    <u>Definitions.</u>

    a.    "Action" as used herein shall mean the above-captioned action, currently pending in the District of Colorado, Civil Action No. 13-cv-03325-MSK-MJW, which was commenced on December 10, 2013.

    b.    Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

    c.    "Plaintiffs" as used herein shall mean Lead Plaintiffs SEB Asset Management S.A. and SEB Investment Management AB.

d.      "Defendants" as used herein shall mean Defendants The Western Union Company, Hikmet Ersek, and Scott T. Scheirman.

e.      To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

3.      Cooperation. The Parties expressly incorporate the United States District Court for the District of Colorado's Guidelines Addressing the Discovery of Electronically Stored Information ("Colorado E Discovery Guidelines") and shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with FED. R. CIV. P. 1 and 26 (as amended effective December 1, 2015); and producing ESI in accordance with FED. R. CIV. P. 34 (as amended effective December 1, 2015); and by meeting and conferring in good faith on topics such as identification of custodians, potentially relevant data sources, search methodologies, costs (including cost sharing), preservation and such other issues as may arise during the course of discovery. Prior to bringing any discovery dispute to the Court, the parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the Local Rules of the District of Colorado and any Orders entered by this Court.

4.      Proportionality. In light of the proportionality standard set forth in FED. R. CIV. P. 26(b)(2)(C) and Commentary 1.4 of the District of Colorado Guidelines Addressing the Discovery of Electronically Stored Information, the Parties shall cooperate in the development of search methodology and criteria to achieve proportionality in ESI discovery. Requests for production of ESI and related responses shall be reasonably targeted, clear, and as specific as practicable.

5.      ESI Liaisons. To promote communication and cooperation between the parties, each party to the case will designate an e-discovery liaison for purposes of assisting counsel, meeting, conferring, and attending court hearings on the subject. The ESI Liaison for Defendants shall be Colleen Kenney, Sidley Austin LLP. The ESI Liaison for Plaintiffs shall be Jason M. Ware, Kessler Topaz Meltzer & Check LLP. The Parties agree to work in good faith to schedule e-discovery conferences when the ESI Liaisons are available.

6.      Requests for Production of Documents. Without waiving any rights under any applicable rules or law, the Parties agree to meet and confer in good faith regarding requests for production, including without limitation, the factors listed in Federal Rule of Civil Procedure 26 as amended effective December 1, 2015, whether sources of ESI are reasonably accessible, and whether and to what extent cost sharing is necessary to avoid undue burden or cost to the producing Party. The Parties are expressly reserving any rights to seek cost sharing under the Federal Rules of Civil Procedure as amended effective December 1, 2015.

7.      Search Methodology.

a.      The Parties may employ one or more search methodologies to identify potentially relevant ESI, which documents may be reviewed for responsiveness prior to production. The Parties will meet and confer and attempt in good faith to reach agreement regarding considerations relating to search methodology, including but not limited to the below:

  i. The method(s) of searching and, if applicable, the use of advanced search and retrieval technologies and the words, terms, and phrases to be searched;

  ii. The identities and numbers of custodians for each side from whom ESI will be collected and searched; and

  iii. The locations of data sources from which ESI will be collected and searched.

  b. Once a final search protocol has been agreed to and executed, a Party may, in good faith, seek to expand or contract the scope of the search. Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion or contraction. If the Parties cannot reach agreement, any dispute may be presented to the Court.

  c. All meet and confer sessions under this paragraph will involve each Party's respective e-discovery liaisons and will give appropriate consideration to proportionality.

  8. Production Format for ESI.

  a. General Provisions. Unless otherwise noted in this Section 8, or unless the Parties agree to a different format other than that described in this Section 8, documents originally collected as electronic files will be converted to Group IV *.tiff image files at 300 dpi, when reasonably practicable. Original document orientation will be maintained (*i.e.,* portrait to portrait and landscape to landscape) except for spreadsheets, which will be produced in accordance with paragraph (f), *infra.* Each *.tiff file will be assigned a unique name matching the Bates number of the corresponding page. Such files will be grouped in folders of 1,000 *.tiff files each. Separate folders will not be created for each document. After such production in image file format is complete, a Party may in good faith request the production of electronic documents in a different format and must describe the reason such additional format is requested. The Parties agree to meet and confer in good faith regarding any such request. Except as otherwise provided in this protocol, documents need not be produced in color initially. However, the Parties reserve the right to seek in good faith replacement images containing color in *.jpg format where applicable. Any file produced in native format should be produced with a corresponding single-page tiff placeholder image, which will contain the Bates number and language indicating that the document is being produced in native format. Files produced in native format should be named with the beginning Bates number that is assigned to that specific record in the production.

  b. Document Text. If electronic files do not contain text that is redacted in connection with the assertion of a privilege or other protection from disclosure, then the entire document text will be produced as follows: (i) on a document level basis; (ii) named for the beginning Bates number; (iii) in a separate Text folder with sub-folders so each folder holds 1000 *.txt files; along with (iv) a load file that contains the Bates number followed by a comma space and then the relative path to the *.txt file, including the name of the *.txt file. Redacted documents will be OCR'd and all such OCR text will be Unicode-compliant (UTF-8).

3

     c.     <u>Parent-Child Relationships and Embedded Documents</u>. Parent-child relationships (the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email record. Email and attachment records shall not be separated except where one is privileged and the other is not. The Producing Party will make good faith efforts to produce embedded documents as independent document records, produced consecutively with the parent and with parent-child relationships preserved. Embedded image files will initially be produced as an image in the parent document, provided that the Parties will meet and confer in good faith regarding any requests for the production of embedded image files as independent document records.

     d.     <u>Dynamic Fields</u>. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file was processed.

     e.     <u>Word Processing Files</u>. All word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be processed to *.tiff images. Word processing files will be processed to *.tiff format with tracked changes and/or comments showing. The Parties will meet and confer in good faith regarding a requesting Parties' requests for further production of particular documents with tracked changes and/or comments showing in native format.

     f.     <u>Spreadsheet Files</u>. All spreadsheet files, including without limitation Microsoft Excel files (*.xls and *.xlsx) will be produced in native format as reflected in Section 8(a), with the file named with a unique identification (Bates) number for the document with the appropriate extension based upon the original file. To the extent that a spreadsheet has redactions, the document shall be produced in *.tiff with rows, columns and spreadsheets unhidden.

     g.     <u>Presentation Files</u>. Presentation files, including without limitation Microsoft PowerPoint presentation files (*.ppt and *.pptx) will be processed to *.tiff images showing comments, hidden slides, speakers' notes, and similar data. The Parties will meet and confer in good faith regarding a requesting Parties' good faith requests for particular presentation files to be produced in native format.

     h.     <u>Database Records</u>. To the extent that any Party requests information that is stored in a database or database management system, such information will be produced by querying the database for discoverable information and generating a report or a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party. The Parties will meet and confer regarding the proper mode for querying and the proper format for producing information that is stored on any database or database management system, as well as the metadata to be produced for each such database (the meet and confer process shall include, if applicable, discussion of any metadata identifying the persons who created, edited, accessed, or printed reports within a database and the corresponding date/time).

      i.    <u>Hard Copy Files.</u> Any hardcopy document with hand-written notes will be treated as a unique document and produced in addition to other versions of the document.

      j.    <u>Non-Standard Files.</u> Non-standard electronic files, include, but are not limited to, source code, transactional data, database files, audio and video files, and proprietary applications not publicly available. The Parties agree to meet and confer in good faith to reach an agreement concerning a reasonable production format for such files.

      k.    <u>Time Zone.</u> Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with paragraph 11(b).

      l.    <u>Bates Numbering.</u> Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will:

      i.    be consistent across the production;

      ii.    contain no special characters; and

      iii.    be numerically sequential within a given document.

If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be disclosed to the requesting Party in writing within a reasonable time after production. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

      m.    <u>Load File Formats.</u> ESI will be produced in Concordance load file format. Upon request, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

      n.    <u>Metadata to be Produced.</u> For all documents collected, the following metadata fields will be produced for each document to the extent that such information is available at the time of collection and processing, except to the extent that a document has been produced with redactions. The term "Scanned Collections" refers to all documents that are in hard copy form at the time of their collection. The term "Email and E-Doc Collections" refers to all documents that are in electronic form at the time of their collection. The Parties agree to meet and confer in good faith regarding a Receiving Party's request for metadata identifying the persons who created, accessed, printed, or edited a particular document (including tracked changes and comments) and the corresponding date and time.

| Field | Sample Data | Scanned | Email and E- | Comment |
|---|---|---|---|---|

| | | Collections | Doc Collections | |
|---|---|---|---|---|
| BEGBATES [Key Value] | ABC 000001 | Yes | Yes | First Bates number of email/doc |
| ENDBATES | ABC 000008 | Yes | Yes | Last Bates number of email/doc |
| BEGATTACH | ABC 000009 | Yes | Yes | First Bates number of attachment(s) |
| ENDATTACH | ABC 000015 | Yes | Yes | Last Bates number of attachment(s) |
| CUSTODIAN(s) | John Beech | Yes | Yes | Mailbox(es) where the email resided |
| FROM | John Beech | N/A | Yes | For email |
| TO | Janice Birch | N/A | Yes | For email |
| CC | Frank Maple | N/A | Yes | For email |
| BCC | John Oakwood | N/A | Yes | For email |
| SUBJECT | Changes to Access Database | N/A | Yes | Subject of the email |
| TITLE | Changes to Access Database | N/A | Yes | Title of the E-Doc |
| DATE_SENT | 10/10/2005 | N/A | Yes | Date the email was sent |
| TIME_SENT | 07:05 PM | N/A | Yes | Time the email was sent |
| FILE_NAME | File.doc | N/A | Yes | File name |
| FILE_EXTEN | MSG(email) DOC (attachment – ex. Word document) | N/A | Yes | The file extension will vary depending if the original document is a parent email or a child attachment or a loose E-Doc |
| AUTHOR | John Beech | N/A | Yes | Attachment or loose E-Doc Metadata; Author of the original native file. |
| DATE_CREATED (C) | 10/08/2005 | N/A | Yes | For attachment or loose E-Doc – in properties. For scanned collections this is the date of document. |
| DATE_MOD (M) | 10/09/2005 | N/A | Yes | For attachment or loose E-Doc – in properties |
| DATE_ACCESSED (A) | 10/10/2005 | N/A | Yes | For attachment or loose E-Doc – in properties |
| PRINTED DATE | 10/10/2005 | N/A | Yes | Attachment or loose E-Doc metadata. Latest |

| | | | | |
|---|---|---|---|---|
| | | | | print date for native file. |
| FILE_SIZE | 32604160 | N/A | Yes | Size of file |
| PATH | C:\MYDOCUM ENTS\ DOEJ | N/A | Yes | Path where attachment or local where local file was stored. |
| INTFILEPATH | Personal Folders/Deleted Items | N/A | Yes | Location of email |
| FULLTEXT | Fulltext\001\00 1\ ABC 000001.txt | Yes | Yes | Text of the email or attachment or loose E-Doc |
| NativeLink | Natives\001\001 \ ABC 000001.XLS | N/A | Yes | Path where Native file is located on production delivery media |
| REDACTED | Yes | N/A | Yes | If document has been redacted |
| MD5HASH (or equivalent) | 0000000000000 0000000000000 000001 | Yes | Yes | The MD5 Hash value or "de-duplication key" assigned to a document |
| EMAIL CONVERSATIO N INDEX | | N/A | Yes | ID used to tie together e-mail threads |
| ALL CUSTODIANS | John Smith, Finance Dept. | N/A | Yes | The list of custodians, either individual or departmental, who held duplicates of this document that have been deleted due to deduplication. |

9.   Production Format for Scanned Collection Documents. Scanned collection documents (those that exist in hard copy form at the time of their collection) will be produced in accordance with Rule 34(a) by being made available for inspection and copying or by copying or scanning the documents. If the documents are scanned and/or scanned using optical character recognition ("OCR"), the producing Party agrees to pay one-half of the reasonable costs of scanning or scanning and OCRing the hard copy documents. Prior to scanning the documents and seeking to have the requesting Party pay one-half of the costs of scanning the hard copy documents, the Parties agree to meet and confer concerning the expected volume of hard copy materials.

10.   De-Duplication. The Parties intend to make reasonable efforts to deduplicate ESI. ESI may be deduplicated vertically within each custodian or horizontally across custodians. ESI will be considered duplicative if it has the same content excluding metadata. For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians. To the extent reasonably accessible, all custodians of removed duplicates should be listed in an "All Custodians" field and identified by full name of the individual or departmental custodian. Documents with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents whose content is identified by such technology as 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

11.   Email Threading. In order to reduce the volume of entirely duplicative content within email threads, the Parties intend to utilize "email thread suppression" wherein only the most complete email within a chain needs to be reviewed and produced (if responsive). Lesser, inclusive emails within chains may be deduplicated, provided that any attachments sent at any point in the email string are produced with the version of the email in which they were attached.

12.   Privilege Logs and Redaction.

a.   Privilege Logs: To the extent that a document is withheld from production on the basis of the attorney client privilege or the work product doctrine, the producing Party shall produce a log of withheld documents within 30 days after the production of documents is substantially complete. For any subsequent productions of documents, the producing Party shall produce a log of withheld documents within 21 days after each such production. The log of withheld documents will contain, as applicable, the below information:

1. A sequential number associated with each privilege log document;

2. The date of the document;

3. The identity of the author, as well as an indication of whether the author is in-house counsel (indicated by one asterisk) or outside counsel (indicated by two asterisks);

4. The identity of the recipients, copyees, blind copyees, as well as an indication of whether such persons are in-house counsel (indicated by one asterisk) or outside counsel (indicated by two asterisks);

5. The title or subject;

6. A description of the contents of the document that is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

7. The nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine).

b.   Email Thread: An email thread may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.

c.   Documents Redacted for Privilege: As an initial production matter, redacted documents need not be logged as long as (a) for emails, the bibliographic

information (*i.e.* to, from, cc, bcc, recipients, date and time, title/subject (as long as the privilege or protection is not contained in these fields) is not redacted, and the reason for the redaction including the nature of the privilege asserted (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested) is noted on the face of the document; and (b) for non-email documents, the reason for the redaction is noted on the face of the document.  After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for some, any or all redacted documents.  Upon receipt of such a request, the Parties agree to meet and confer regarding the need for a log and, if one is agreed to, the format of such log.  If the Parties cannot agree on the need for or format of a log of redacted documents, any Party may seek the assistance of the Court.  The reason for the redaction (as set forth above) must be noted on the face of the document in the redacted area.  Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

        d.      Documents Not to Be Logged on Privilege Log.  The following documents need not be included on a privilege log:

    1.    Work product created by the producing Party's in-house or outside trial counsel or by an agent of in-house or outside trial counsel after October 30, 2012.

    2.    Communications solely between the producing Party and its in-house or outside trial counsel after October 30, 2012; or

    3.    Internal communications solely within the producing Party's in-house counsel or outside trial counsel firm(s).

        e.      Dispute Resolution.  After the receipt of a privilege log, any Party may dispute a claim of privilege, however, prior to any submission of any issue to the Court, the Party disputing a claim of privilege shall provide in writing the identification (by Bates number) of the documents for which it questions the claim of privilege and the reasons (including legal support) for its assertion that the documents are not privileged.  Within 14 business days, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege (including legal support). The Parties will then meet and confer in good faith as to the claims of privilege.  If agreement has not been reached after 7 business days, any Party may thereafter submit a motion with the Court for a determination as to privilege.

    13.    Prioritized Searching.

        a.      Data Sources that are Reasonably Accessible:  The Parties agree that any search for relevant and discoverable documents shall initially involve searching for such documents in reasonably accessible data sources within which such documents are likely to be found.  All active sources, such as document management and hosted sources, are presumed to be reasonably accessible.

        b.      Data Sources that are Not Reasonably Accessible:  Unless the producing Party reasonably believes that the responsive material is contained only in data sources that are not reasonably accessible, data sources that are not reasonably accessible

because of undue burden or cost shall not be searched, if at all, until the search(es) described in the preceding subparagraph have been completed. Requests for information expected to be found in data sources identified as not reasonably accessible because of undue burden or cost must be narrowly focused. The Parties agree to meet and confer regarding what data sources are considered not reasonably accessible and whether such data sources need to be searched for responsive material.

        c.     Use of Natively Produced Documents: The Parties agree that if a natively produced document is to be used in a deposition, the Party seeking to use the native file will provide the identification number and the MD5 hash number to the witness at deposition prior to questioning the witness about the document or at least two days in advance of the deposition. If the Party seeking to use the native file provides the witness with the identification number and MD5 hash number at the deposition, the Party agrees to provide the witness with sufficient time to review the document to insure that it is an accurate and complete document prior to questioning. Should any counsel wish to undertake additional analysis of the accuracy and completeness of the document, such analysis will be conducted off the record. The Parties will meet and confer prior to trial regarding procedures for the use of natively produced documents at trial.

        14.     Authenticity and Admissibility. Nothing in this protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

        15.     Confidential Information. For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Protective Order.

        16.     Encryption. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

        17.     Preservation of Discoverable Information.

        a.     The Parties incorporate Federal Rule of Civil Procedure 37 (e)(1), as effective on December 1, 2015. The Parties are not required to modify or suspend, on a going forward basis, the procedures used by them in the ordinary course of business to back up and archive data, including backup media rotation procedures. The Parties have not taken, and are not required to take any backup tapes out of ordinary rotation.

        b.     Absent a showing of good cause by the requesting Party, the categories of ESI identified below need not be preserved.

        1. Deleted, slack, fragmented, or other data only accessible by use of computer forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, browser history, file or memory cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network, such as date last opened or printed.

5. Telephone or VOIP messages, unless such messages are included as audio files in email.

6. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

7. Electronic mail or pin-to-pin or text messages sent to or from mobile devices, cell phones, smartphones, or blackberry devices, provided that a copy of such mail is routinely saved or stored elsewhere.

8. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

9. Logs of calls made from mobile devices, cell phones, smartphones, or blackberries.

10. Operating system files, executable files, server, system or network logs.

11. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

SO ORDERED, ADJUDGED, AND DECREED this 18ᵀᴴ day of _November_, 2015.

_____
Michael J. Watanabe
United States Magistrate Judge
District of Colorado

**APPENDIX A**
**File Types To Be Processed**

| | |
|---|---|
| 123 | WAV (only if attached to a parent email) |
| BMP (only if attached to a parent email) | WK1 |
| DOC | WKS |
| DOCX | WK3 |
| GIF (will if attached to a parent email) | WK4 |
| HTM | WPC |
| HTML | WPD |
| JPG (only if attached to a parent email) | XLS |
| MSG | XLW |
| NSF | XLSB |
| PDF | XLSM |
| PNG (only if attached to a parent email) | XLSX |
| PPT | XLT |
| PST | XLTM |
| PPTM | XLTX |
| PPTX | XLM |
| RAR | ZIP |
| RTF | |
| TIF | |
| TXT (excluding TXT files from system file directories) | |